Good morning, Your Honors. I'd like to reserve three minutes for rebuttal. Watch the clock, please. May it please the Court, my name is David Grimes. I'm here representing the plaintiff appellant Giorgio Quiniones. This case concerns the injury suffered when a battery owned by Giorgio Quiniones, the plaintiff, exploded, showering him with acid flames and disfiguring his hand. That explosion was the result of a thermal runaway, a condition endemic to lithium-ion cells, where something, sometimes environmental, sometimes not, causes an internal short circuit that causes the cell to overheat catastrophically. Thermal runaway fires are not a Roman candle or a box of matches. They're an explosion of scalding acid and unquenchable flame. Third-degree burns, skin grafts, and nerve damage are common. So cells have multiple internal safety features that are supposed to disable the cell before the thermal runaway becomes catastrophic. An expert determined that LG Chem, a Korean company, manufactured the cell that hurt Mr. Quiniones. Mr. Quiniones sued LG Chem, and LG Chem sought to be dismissed for lack of personal jurisdiction. Counsel, so I think if we were writing on a blank slate and simply applying Ford Motor Company, I'd probably be inclined, personally, to find that there was error in the district court's jurisdictional analysis. But I think the problem is that we're not writing on a blank slate, and we have our court's decision in Yamashita, and particularly rejecting the consumer market theory. So what do we do about that? I appreciate the question. I agree, certainly, that the lower court basically applied pre-Ford standards but for causation. And I think if you go back to immediately post-Ford, this court in L&S Enterprises laid out there's a three-step plan or a three-step process for establishing personal jurisdiction over a foreign defendant. There's three prongs, I suppose. The first prong, the non-resident defendant must purposefully avail himself of the privilege of conducting activities in the forum, purposeful availment. Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. And a strong showing on one of the first two prongs will permit a lesser showing on the other. Well, let me, I mean, I think Judge Chung's question was focused more narrowly on dealing with the Yamashita precedent. I appreciate that. Well, we understand the background. We have these cases. We've read the briefs, read the cases. Right. Yamashita sits there and you've argued that it's wrongly decided, bad policy, blah, blah. None of that helps us because we are bound by it. So I think you're going to need to distinguish that case if you want us to figure out a way to reach a different result. So I understand the background, but time's a wasting. We need to focus on why it is that we're not bound by Yamashita. Well, I think there's two ways to get around Yamashita. The first of which is that Yamashita never considered the fact that thermal runaways are a risk inherent to any lithium ion cell. And so when you go back to the second prong, the relates to analysis, right, the fact that it doesn't need to arise from the context, but it relates to the analysis. What product was involved in Yamashita? It was an LG Chem 18650. Exactly the same product. I agree. So I'm not sure how that helps us say that Yamashita doesn't apply here. Well, the issue is that the court looked at the LG Chem's contacts with Hawaii that were in the record in Yamashita, and it didn't really consider the relationship, the relate to, between those contacts, intentional contacts, and the 18650 cell at issue. And the point I make – I make a couple points, one of which is LG Chem ships 18650 cells in Yamashita. It was just the residential solar batteries, large batteries. It didn't interrogate whether those are actually just a bunch of 18650 cells together. Right, but in denying discovery in Yamashita, the court said even if they did ship these cells, it wouldn't matter. Right. And once again, I think the issue is you have to look at this thermal runaway issue. The words thermal runaway appear nowhere in the Yamashita opinion. They appear, I think, once in the lower court opinion. The court assumed, without there being any evidence to that point, that there was something really distinct between thermal runaway from a residential solar battery, a battery in a consumer product, and thermal runaway in a standalone new cell. Well, I think Judge Sung is focused on the particular statement in Yamashita that specifically refers to 18650 batteries, even if they're sold to manufacturers for incorporation and consumer products sold in Hawaii, that's not going to matter. Yamashita didn't hang its decision based upon the difference between the products. It makes a specific reference to the kind of product that's involved in your case and says it wouldn't matter, denied or affirmed the denial of jurisdictional discovery, that it wouldn't matter. So the fact that Yamashita doesn't get into the details of the consumer battery doesn't seem to me to say why Yamashita doesn't bind us. Are you asking whether? That's the issue I'm trying to get some help on. I mean, I may share Judge Sung's feelings that if we're on a clean slate, if Yamashita wasn't there, maybe a different result can be justified. But we're bound by our own prior decisions. So that's why I'm asking for help. What is it can distinguish it? And the first distinction you offer doesn't really seem to work because Yamashita talks specifically it wasn't the product involved, but it declined to permit discovery into the sale of batteries of the consumer variety, the 18650, whatever the number was, because it said it wouldn't matter. So how can that offer a distinction we can rely upon? Well, the idea that it wouldn't matter is a conclusion that was derived from the limited factual record before it on Yamashita. And it made a point of denying discovery, which would have amplified the record, because it said it wouldn't matter. It doesn't seem that discovery would have led to anything. I was not counsel on Yamashita, but I think he made a not particularly compelling case that there was something to be discovered on a jurisdictional discovery, further jurisdictional discovery. I think once you understand how these cells are made, how they're used, the dangers they pose, it's possible you get a new factual record and you have the opportunity to understand that this is not an injury that is specific to loose cells. Thermal runaway is a danger of any lithium ion cell, no matter how it's used, where it is. But if there were a claim that related to this battery used as a component in a manufactured device that was sold in California, I think we'd be in a different boat. The whole consumer market theory, though, is should someone be hailed into court if the product that they are intending to sell to one market gets diverted by others into an unintended use, and does that offend notions of fairness or due process, or is it sufficient to relate to the injury? I think those are the underpinnings in Yamashita that seem hard to avoid in this case. So tell me why that's so. So I think there's a couple things. And one, I apologize, I want to step back a little. One issue that I feel like the Ninth Circuit has a little bit stopped considering when weighing these cases is the interest of the plaintiff to the form of their choice and particularly the form in which they reside. That's supposed to be given weight, and it's not really clear where in the current jurisprudence that weight is supposed to be applied. But right now you have to take up with the Supreme Court, which has injected personal jurisdiction as an issue where it didn't used to be. I mean, I think modern global commerce has complicated things, too, selling things on the Internet. It feels like a very different scenario now than when a lot of the jurisprudence was made and then the cases that reach the Supreme Court don't actually give them an opportunity to discuss these issues. But I think in the context of a resident plaintiff in a forum where this product is being sold and used all the time, there's a test, and I discuss it in the reply brief. Let's see if I can. The court should look at the danger posed by the product and the volume of that product that the manufacturer allows to arrive in the forum state. So that if a product is dangerous or there are lots of them in a state, it can't be an unfair surprise that someone might want to sue whoever made that product in that state. And I discuss that a little bit in the reply brief. That analysis is a synthesis or a harmonization of the ruling in Jay McIntyre, the metal shear, and the fact that that was a closely divided court about this one industrial metal shear that ended up in New Jersey. The guy hurt his hand, and it was almost 50-50 with the court saying whether jurisdiction should lie on the manufacturer of that metal shear or not. You have the analysis in Ford v. Montan discussing the wooden duct that's purchased over the Internet. It's obviously not a dangerous item. It's a one-off. These are the factors the court is considering, and then that's spelled out specifically in Justice Stevens' concurrence in Asahi. And that looks at what makes it fair or unfair about bringing a party within a court's jurisdiction. LG Chem knows there are scenarios where an 18650 battery may explode in California, and it may have to show up and answer for that performance. The fact that it didn't intend for this particular cell to end up in California really does not impose an unfair burden on LG Chem. LG Chem, in the cases, and they're pretty common where a judge does find that LG Chem is subject to personal jurisdiction, they bring out the same lawyers. It's Louis Brisbane. It's Nelson Mullins. It's Exponent who analyzes it, whether it's one of these 18650 cells, whether it's a giant residential battery like one that exploded in Arizona. And it's not just how the batteries are used. So I guess you're arguing that if a defendant manufacturer sells a product into a state and it has a certain intention as to what that market is or what its use should be, all bets are off. If it gets used in a completely different way, lands in the hands of people, you know, through no control of its own, that will be enough for personal jurisdiction? So, one, they can make that case on the third prong of the analysis, having established the plaintiff, the first two prongs. The third prong goes to them to show that it is, for some reason, unreasonable or unfair for them to have to litigate. Agreed, but it also overlaps with the relates to analysis, arguably. At least Yamashita came up with that reasoning. I agree. Yamashita really sought to, I guess, bring back, if not but for causation, basically complete identity of products and uses that the manufacturer intended with what the plaintiff was using, which is really not consistent with, like, So I guess to circle back with my colleague's questions, I don't know that you were getting much traction with the thermal runaway justification for distinguishing Yamashita. Is there anything else that would tell this panel that we're not bound to follow Yamashita in this case? I will say the contacts with California are far more extensive than they are with Hawaii, far, far more. And if you look at those first two prongs, you're supposed to weigh them, and you don't need such a strong relate to showing if the contacts are stronger. You're supposed to allow for a weaker showing on prong two if you have a stronger showing on prong one. And there's plenty. We have the import records. We have the antitrust violation on these cells. We have the lawsuit about the ceramic separator that's in every single lithium ion cell to prevent thermal runaway. I mean, it's – I don't want to say it's more than Ford's contacts with Montana. Certainly, they're a little different. LG does not directly advertise to consumer users its batteries. But they know how to defend themselves in court. And that's the question. Can LG fairly defend itself in court? Are we forum shopping trying to get one over on a foreign defendant that can't protect itself? We're not. And our plaintiff has nowhere else to go. This is his form of last resort. He didn't take this somewhere where he thought he could sneak one past LG. This is where he lives. This is where he bought the cell. This is where he was hurt. Counsel, I think you wanted to reserve some time. I'll give you your three minutes. We asked you a lot of questions. Thank you. May it please the Court. Good morning, Your Honors. My name is Rachel Headley. And I am here on behalf of Appli LG Chem Limited. So I want to start – of course, my opening comments would have been Yamashita controls. And I want to talk a little bit about Yamashita because what I hear from the Court is some concern. We have to follow this, but we don't really like it. And I want to assuage that concern because I think Yamashita was 100 percent correct. And the Ninth Circuit, it is controlling. It is not distinguishable. But it stands in very good company. And the reasoning behind that decision, I think, stands in very good company. So I do want to mention something that counsel did not discuss, but it was in the reply brief. So I feel like I would be remiss if I did not mention. But at one point in the reply brief, and it's on page 31, counsel or plaintiff attempted to make the very distinction that the Court is asking for today and said this is actually distinguishable from Yamashita because here there is evidence that LG Chem targeted that consumer market, the consumer market for standalone batteries, that the Yamashita Court said there's admissible evidence that that was not the case. So I just want to correct that statement because if the Court reads that section, and it's on page 31 and 32, there is no citation to the record. However, my citations to the record are the declarations of Mr. Hui-Jae Lee, which are at five excerpts of Record 818 and three excerpts of Record 304. There is a supplemental declaration. And just to briefly explain, as the Court is reviewing the record, we filed a motion to dismiss and put in a declaration the initial motion to dismiss. The plaintiff opposed it and attached maybe 40 exhibits. And so we put in our reply the first go-round. Well, so Ms. Hudley, as counsel points, and I think it's correct, that there is more targeting of the California market here than there was in the Hawaii case with evidence of these particular batteries showing up in the ports and being used as components for operating systems in other devices. Does that do you, I assume you disagree with the notion that that would change or allow us to distinguish Yamashita? Why would that not be the case? I do. I'm sorry, excuse me. And first of all, in Yamashita, of course, as the Court noted earlier, the question was, can we have jurisdictional discovery? Can we find out if LG Chem was shipping 18650s into Hawaii? And the District Court said, you don't need that. And then the Ninth Circuit affirmed and specifically said, those shipments that might be going to an equipment manufacturer to pack in a battery pack and put in the back of a power drill or a laptop computer, that is not selling it as a standalone product. That is a component. It is not meant to get into the hands of a consumer as a standalone product. And so I believe that that was not dicta. It was central to the decision to affirm why there should not be jurisdictional discovery. Now, the California Court of Appeal, which I understand, of course, is not binding on this Court, was a very well-reasoned decision in the Lawhon case and its superior court versus LG Chem that we talk about. And that was decided post-Ford. Again, same facts, essentially, but in California. And the plaintiff made the exact argument there that we're getting here that under Ford, the sentence that begins Ford is not quite the first sentence of Ford when it says a company serves a market for its product and an injury occurs there. But it doesn't say a company. It says a company like Ford. And if you go to the sentence right before that, it talks about all of the extensive things that Ford did to serve a consumer market in those states, not only having dealerships on every corner, not only radio and web and print advertisements, consumer repair and replacement products, by every means imaginable, encouraging consumers to buy and use and drive and repair those particular cars in those states. Here, LG Chem is nothing like Ford. This is not a company like Ford. And toward the end of the Ford decision at footnote four, the Supreme Court reiterates, by this decision, we do not mean to say that any isolated or sporadic sales, there is no magic formula that says if you shipped a cell or a hundred cells into the state, automatically somebody over here claims an injury. And that means there's jurisdiction. Ford does not say that. And the Lawhon case has a very extensive analysis that is consistent with Yamashita, but specifically talking about California and these contexts that we're talking about today. Well, is there any dispute, at least at this stage of the case, that your client was the source of the battery in question? In terms of being the manufacturer? Correct. So this case is a little bit of, I suppose, an interesting. We're at a very early stage, so a lot of factual development isn't there. And at this point, is there any basis for us to assume that it actually wasn't manufactured by your client? I don't believe so. But this case's prior history is that the plaintiff actually originally filed a lawsuit in the northern district of Georgia, along with a series of other lawsuits represented by the same counsel representing the plaintiff here. And in that case, tried to assert jurisdiction over LG Chem in Georgia, based on the fact that it had an in-state subsidiary there, and argued to that court that that was the hub and the center of LG Chem's activities in the United States for 18650 cells. And when LG Chem was dismissed from those cases, plaintiff voluntarily dismissed this suit and refiled it here. And so there was some merits discovery conducted with respect to that subsidiary in-state entity, but there has not been any in this particular lawsuit to the extent that plaintiff is talking about the expert review. We are not at the merit stage of this case, and so that's not part of the record. Well, I take your answer to be basically, yes, at this stage, there's no reason for us not to accept the allegation that the manufacturer was LG Chem. That is alleged in the complaint, and we did not dispute that for purposes at this stage. That's correct, Your Honor. Next, is there any doubt that or any allegation or claim that this battery was stolen and LG Chem did not receive revenue for its sale to whomever it sold it to? I'm sorry. I want to make sure that I'm answering and that I understand the question. But if the question is, is there any doubt about how this battery cell arrived in California, whether it came via a shipment to an equipment manufacturer or came via some other method, I don't believe there's any doubt or dispute. The plaintiff alleged that it was purchased at a vape store called Yo Mama's Favorite Vape Shop in Stockton, California. None of this is really speaking to LG Chem, so let me try to be more direct. Any doubt that LG Chem received money for this battery? At some point, perhaps in Korea. I suppose at some point LG Chem might have sold the product, the battery, if in fact they manufactured the cell to somebody in Korea or somewhere else. I don't know who did it. It was taken out of the stream of commerce, resold and diverted into another chain of distribution and made its way into California. And the reason I think that's important is because even if LG Chem did not ship 18650s to equipment manufacturers in California, this entire suit would happen. The plaintiff put the last sentence of the brief says, it doesn't matter how the battery got here and it doesn't matter how it was used. Any state in this country, it doesn't matter if LG Chem is shipping 18650 cells on a limited basis to customers. And what's important, too, coming to this point, time is going by for you to assume for a moment that one possibility is that LG Chem sold the battery or shipped it itself even and sold the battery to somebody other than intended to be a consumer product distributor. I think the alternative that's been discussed to be included as a component in some other product that was going to be sold where the battery is a part of it, but it's not actually the product being sold. Has that possibility been ruled out? Well, I think it is by the admissible evidence in the record, and I quoted earlier to the pages in the record where we have the declarations, a sworn testimony of Mr. Hui-Jae Lee who says that LG Chem never sold 18650 lithium ion cells to anyone known to be engaged in the business of supplying those cells to a consumer. See, that's not answering my question. Indeed, it incorporates the part of my question that said being sold to somebody who's going to incorporate it in something else. I mean, there are other reasons for a manufacturer to be interested in acquiring these batteries to use them for something else. So I'm accepting the proposition that they weren't intended to be distributed or sold as batteries. And there's no evidence of anything different. The admissible evidence in the record is that LG Chem's customers for these cells were only authorized to pack them with protective surgery and battery packs, and there's no ‑‑ So you keep trying to divert the question. Because what I'm trying to get to is, and maybe I'm hypothesizing that we are not bound by Yamashita because you expressed concern about the concern that we expressed as to whether personal jurisdiction should really be a barrier that protects LG Chem for injuries that might have been caused by its products that were knowingly sold to somebody in the State of California, even if not intended for distribution for sale in the way that this plaintiff acquired it. And you keep trying to tell me that didn't happen, but I'm not sure how I can reach that conclusion at this point. Well, I think if the court is asking could LG Chem have sold a cell to somebody in California and then the somebody in California sent it to a vape store, that is not possible. I don't believe in that. That's not even what's alleged in the complaint. The plaintiff alleges in the complaint that somebody on the other side of the world acquired these cells, took them out of their intended chain of distribution and put them into a consumer vaping market. My question diverted too early. I guess I'm really aimed at the possibility of somebody else buying them either in California or in Hong Kong or Korea or someplace else. But if that were enough, then, for example, if LG Chem sold its battery cells only in Hong Kong or in Korea and didn't ship any into the United States and somebody still brought them into the United States, then under Your Honor's question, I would think that it would still be the same thing, that at some point LG Chem manufactured the product, someone else brought it here, but our jurisprudence says that you have to look at the context with the forum state. And under Yamashita, for example, which, again, I have no concerns with Yamashita, but I am trying to, you know, respond to what I hear from the court. But in Yamashita, it was very clear in talking about what does relatedness mean. And one example and explanation was it's not just that those cars in Ford didn't come into the state by Ford's efforts, but other cars could have. By contrast, in Yamashita, it's not just that that cell didn't come into the state, in that case Hawaii, through the efforts of LG Chem, but any of them, any consumer that walks into a vape store and purchases one of these cells and did not come into that state by LG Chem's activities. And so I believe that additionally there might be more federal appellate court decisions, but many federal courts, district courts, have granted similar motions and the plaintiff simply did not appeal them. So the greater weight of authority, I think the number of decisions on this issue in state appellate courts and in federal district courts around the country, including in the Ninth Circuit, weighs in favor of LG Chem's position. And I think it is consistent. And, again, this case is not like Ford. And I think it's important also to focus on the fact that in Sullivan, for example, in the Sixth Circuit case where the Sixth Circuit went the other way, if you read the Sixth Circuit decision in part, of course I respectfully disagree with the outcome, but particularly the Sixth Circuit noted what it construed as two shipments. One was 100 cells that went to a vacuum cleaner manufacturer as a sample. And another was a shipment, one shipment that LG Chem sold to an in-state subsidiary engaged in research and development activities, and it said there were 50,000 pounds of battery cells. But it was 50,000 pounds of battery packs, and it went to an in-state subsidiary, and that was it. And based on those two limited shipments, the Sixth Circuit said that's enough. I don't think, if you look at these different decisions around the country, I think you'll find that there's no constant argument or reasoning running through them. But the cases that are finding jurisdiction lacking over LG Chem, there is a constant running through them, which is that there is no relatedness, because LG Chem could not have done something differently, short of pulling its business completely out of the United States. It couldn't have done something differently, and so, and Yamashita, the court noting that, I'm sorry, Shoshana, do you have a question? Well, I mean, you're saying that couldn't, I mean, part of the argument here is, right, is that your client is producing defective product, and it's maybe LG Chem isn't intending it to be sold directly to consumers, but there's, it's still selling these products into the California market. So, I mean, I guess I'm just saying technically, assuming all the allegations to be true, they could have a product that doesn't explode. Well, and I believe that we're not at the stage of the merits, but I do want the opportunity to comment very briefly on plaintiff's arguing for the merits and how this happened. But talking about an internal short in a lithium-ion battery cell is incredibly rare. It is one in a million. Well, the airline still asks me when I check in, do I have a lithium-ion battery in my luggage? Right. And so these particular... They don't ask about everything. They ask about that. That's true. And these particular lithium-ion cells that are causing these incidents, it's not internal short, it's an external short, and it's caused by the improper handling. And there's a website warning on LG Chem's website. As you say, that's all merits. Right. That's just a question of whether they even get to bring the claim. Is there ñ I've been trying to go through what you've said. I've been trying to go through the declaration of Mr. Lee. Is there a basis to conclude that LG Chem did or did not sell batteries to purchasers in California? I'm sorry. I see that I'm out of time. I might take just an extra 20 seconds to finish answering that question. So there is a basis to conclude that LG Chem shipped 18650 cells to equipment manufacturers and battery packers only in the state of California. However, it did not advertise. It did not seek them out. It did not market to them. The customers come to LG Chem, say, we want to buy for this purpose. They're sold only for that purpose. They're prohibited from other purposes. And, therefore, our position would be there's no relationship between these claims and anything, any contacts with California formed by LG Chem, which is the constitutional standard. And in closing, I would just say that Yamashita, as the court has recognized, is controlling, and we ask that the court follow its own precedent and affirm the district court's decision. I mean, do you just want to give you one more, one opportunity to answer the question. Do you have a position on whether we need to wait for our ombud decision in Shopify? I don't think so. I was just looking at the Shopify decision, and I think that that's focused on internet contacts, which is a little bit different than here. But unless Shopify is going to overturn Yamashita, then certainly the court could wait. But I think that Yamashita is good law and is a different set of facts, and I don't anticipate that it would be overturned. But it is controlling, and we ask the court follow it. Thank you, Your Honors. My colleague mentioned how LG only intends for its sales to come into California and be placed in battery packs, for use in battery packs, as though that somehow solves the issue of whether they could expect to be held, to show up in a California court to have to deal with one of these batteries exploding. And I want to talk about that. A few months ago, about two or three months ago, a big rig hauling lithium-ion cells overturned on Interstate 15 between Barstow and Las Vegas. The cells inside underwent uncontrollable thermal runaway, and the fire shut down I-15 for two days. As a result, last month, Congresswoman Dina Titus of Nevada introduced legislation called the Thermal Runaway Reduction Act. That's H.R. 9588 of the 2024 session. It asked for the Secretary of Transportation to work with the U.N., which develops the testing standards for transportation of lithium-ion cells, to develop an impact test for lithium-ion batteries to ensure they can withstand forces experienced in transport accidents without going into thermal runaway. So when you look at whether LG might expect to be sued in any particular state, you shouldn't just be looking at how it intends for people to use its cells in the state. It's enough to see that it moves its cells through a state to find it's on notice it might get sued in that state for its cells blowing up. And as you mentioned, Your Honor, you can also look at the air transportation regulations in the opening brief for another example of the danger posed by just transporting these cells. It is inappropriately narrow focus to look only at the cell's use. The fact is that the cells exist in the state. LG causes the cells to exist in the state. The cells can explode at any time, and LG is on notice that it may have to respond to a lawsuit concerning these cells exploding at any time in California. That makes it not unconstitutionally unfair to bring them into court any time any one of these 18650 cells explodes in the state. I believe Ms. Headley also referenced LeJuan, an appellate case in California. I'll just point out LeJuan was very clear. It was limited to the fact record before it, and fact records differ. Whatever facts were presented to the court that might suggest relatedness, purposeful availment, may and probably did differ between LeJuan and the record that's before the court here. Do you have an opinion on whether we need to wait for our on-blog decision in Shopify? I'll be honest with you, Your Honor, I am not familiar with the decision in Shopify. Fair enough. Thank you. Thank you, counsel, for your helpful arguments. This matter is submitted.
judges: CLIFTON, SUNG, SANCHEZ